**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Taylor, ) | No. CV 08-8131-PHX-JAT |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| National Rural Electric Cooperative ) Association Group Benefits Program, an ) ERISA Plan; Cooperative Benefits ) Administrators, Inc., a Nebraska ) Corporation, ) | |
| Defendants. ) | |

On Feb. 25, 2009, Plaintiff filed a Brief Re Discovery in ERISA Disability Cases (Doc. #27). In response, Defendant filed a Memorandum Regarding Permissible Scope of Discovery (Doc. #28). Plaintiff filed a Reply on March 13 (Doc. #30). On April 9, the Court granted Defendant's Motion for Leave to File a Sur Reply Brief Regarding Permissible Scope of Discovery (Doc. #32) and approved the parties' stipulation to filing a sur reply and a sur sur response (Doc. #35). Defendant's Sur Reply Brief (Doc. #37) and Plaintiff's Sur Sur Response (Doc. #38) were subsequently filed on April 9, 2009. After reviewing the parties' filings, the Court now holds that the scope of discovery is limited to the administrative record and the governing plan documents.

///

///

**BACKGROUND**

Plaintiff John Taylor was employed by Navopache Electric Cooperative, Inc. ("Navopache") until January 28, 2005. Taylor alleges that he has not "engaged in any substantial gainful activity" since that time. Compl. at ¶ XIII. Navopache employees are offered health care and other benefit plans that are sponsored by Defendant National Rural Electric Cooperative Association ("NRECA"), and claims are adjudicated by Defendant Cooperative Benefits Administrators, Inc. ("CBA"). Compl. at ¶ VIII. Subsequent to ceasing his employment, CBA approved Taylor's claim for disability due to "musculoskeletal impairments," and Taylor began receiving benefits on April 20, 2005. Compl. at ¶ XV. On Dec. 24, 2007, Taylor was awarded Social Security disability insurance benefits based on a finding that "he was incapable of engaging in substantial gainful activity in any occupation since January 28, 2005." Compl. at ¶ XVI. On April 28, 2007, Taylor's CBA-approved benefits were scheduled to end. In order to continue receiving the benefits, CBA required Taylor to show that he was "completely unable to engage in any and every gainful occupation for which [he] is reasonably fitted by education, training or experience." Compl. at ¶ XVII. On March 4, 2007, after reviewing his claim, CBA notified Taylor that Taylor's benefits would be terminated on April 28, 2007. Compl. at ¶ XVIV. Taylor submitted an appeal that CBA denied on June 20, 2008. Compl. at ¶¶ XX-XXI. Taylor thereafter filed this suit against NRECA and CBA, alleging "breach of contractual and/or fiduciary duties" pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B).

*The Plan*

Defendant asserts that "this case involves a unique plan structure under which neither the plan sponsor (NRECA) nor the entity that decides claims (CBA) is financially responsible for the payment of benefits." Def. Memo. at 2-3. The NRECA Group Benefits Program ("the Plan"), under which Taylor seeks long-term disability benefits, is an "employee welfare benefit plan" under ERISA that provides benefits to employees of rural electric cooperatives, including Navopache. Def. Memo. at 3. Though NRECA sponsors the Plan, the funds used

- 2 -

to pay benefits are contributed by the rural electric cooperatives that participate in the Plan. Def. Memo. at 3-4; Def. Exh. A at ¶¶ 12-13; Def. Exh. B at § 5.03. The funds are held in the NRECA Group Benefits Trust ("the Trust"), which the Internal Revenue Service has designated to be a Voluntary Employees' Beneficiary Association ("VEBA"). Def. Memo. at 4; Def. Exh. A at ¶¶ 13, 16-17; Def. Exh. B at § 5.01; Def. Exh. F; Def. Exh. G. Furthermore, the Plan's disability benefits are funded solely through contributions from participating cooperatives, and no insurance company participates in either paying benefits or deciding claims. Def. Memo. at 4; Def. Exh. A at ¶¶ 12-13; 18-19; Def. Exh. B at §§ 5.01, 6.01.

CBA is a subsidiary of NRECA and is the claims adjudicator for the NRECA Plan. Def. Memo. at 4; Def. Exh. A at ¶ 20; Def. Exh. B at § 8.01. CBA has been granted "final, absolute, conclusive and exclusive" discretion to interpret the Plan and adjudicate claims. Def. Memo. at 5; Def. Exh. B at § 9.06. Additionally, CBA is paid a flat fee for its services based on the number of participants in the Plan, without regard to how claims are decided. Def. Memo. at 5; Def. Exh. A at ¶ 25. In this case, CBA exclusively handled Taylor's claim for disability benefits. Def. Memo. at 5.

# ANALYSIS

*Standard of Review*

The scope of permissible discovery in an ERISA case will depend on the standard of review used by the Court to evaluate the plan administrator's decision. The denial of benefits under a plan that is subject to ERISA "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "When a plan unambiguously gives the plan administrator discretion to determine eligibility or construe the plan's terms, a deferential abuse of discretion standard is applicable." *Burke v. Pitney Bowes Inc. Long Term Disability Plan*, 544 F.3d 1016, 1023-1024 (9th Cir. 2008) (citing *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006)). In general, when applying this standard to an ERISA plan,

this Court's review is limited to the administrative record. *Burke*, 544 F.3d at 1027-1028 (citing *Abatie*, 458 F.3d at 970).

Here, the Plan clearly grants to CBA "discretion and final authority to interpret and construe the terms of the Plans [and] to determine coverage and eligibility for benefits under the Plans . . . ." Def. Memo. at 5; Def. Exh. B at § 9.06. Thus, the Court must apply an abuse of discretion standard in this case.

*Conflict of Interest*

A conflict of interest arises in an ERISA case when "the entity that administers the plan . . . both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008). However, the abuse of discretion standard does not change simply because there exists a conflict of interest; rather, such a conflict should "be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Glenn*, 128 S. Ct. at 2350 (citing *Firestone*, 489 U.S. at 115). Furthermore, "whether to permit discovery into the nature, extent, and effect of the [p]lan's structural conflict of interest is . . . a matter within the district court's discretion." *Burke*, 544 F.3d at 1028 n. 15.

Here, Plaintiff has provided no basis for further discovery into any alleged structural conflict of interest. Plaintiff relies heavily in his Brief on the holding in *Burke* that "even when a plan's benefits are paid out of a trust, a structural conflict of interest exists that must be considered as a factor in determining whether there was an abuse of discretion." 544 F.3d at 1026. However, *Burke* involved an employer-administered plan and an employer-funded trust. *Id.* Thus, the court in *Burke* found that the employer had "a financial incentive to keep claims' experience under the Plan as low as possible." *Id.* Under the structure utilized by NRECA to administer the Plan, however, there is no indication in any of the Plan or Trust documents that either NRECA or CBA has a financial stake in the outcome of claims. Def. Exhs. B-H. Neither NRECA nor CBA contributes funds directly into the Trust. Def. Exh. A at ¶¶ 12-13; 18-19; Def. Exh. B at §§ 5.01, 6.01. Rather, the Trust is funded entirely by contributions from contributing employers, including Navopache. *Id.* Moreover, CBA, the

sole claims adjudicator of the Plan, does not pay benefits out of its own pocket. *Id.* Rather, successful claims are paid directly from the Trust. *Id.* Thus, the two primary requirements for a structural conflict of interest cited above in *Glenn*, even when considered under the application in *Burke*, are missing here.

Plaintiff argues, however, that a structural conflict of interest nevertheless arises from the parent-subsidiary relationship between NRECA and CBA. Though NRECA's conferral of discretion on its own subsidiary requires consideration, the Court does not find this aspect of the Plan's structure problematic. In certain cases, some incentives may exist for a subsidiary company to decide claims in favor of its parent company. *See e.g. Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 301 (5th Cir. 1999) (finding decision by claims administrator, who was a subsidiary of insurer who paid benefits, "was, to some degree, self-interested"). However, Plaintiff has failed to provide any indication of any such incentives in this case. Moreover, Plaintiff only offers unfounded, hypothetical scenarios regarding how funds from the Trust could potentially be paid out to NRECA or CBA. Such conjecture does not establish any legally recognizable conflict of interest on which to base an extension of the usual scope of discovery under the abuse of discretion standard.

Accordingly,

**IT IS ORDERED** limiting the scope of discovery in this case to the administrative record and the governing plan documents.

**IT IS FURTHER ORDERED** that Plaintiff's Opposition to Defendants' Motion for Sur Reply Brief (Doc. # 33) is granted in part and denied in part. In the Court's April 9, 2009 Order (Doc. # 36), the Court approved the parties' stipulation permitting Defendants to file a Sur Reply Brief and Plaintiff to file a Sur Sur Response Brief. Although the Court gave Plaintiff permission to file his Sur Sur Response Brief, the Court did not explicitly resolve Plaintiff's Opposition to Defendants' Motion for Sur Reply Brief (Doc. # 33), wherein Plaintiff requested this Court to deny Defendants' motion to file a Sur Reply Brief or, in the alternative, permit Plaintiff the opportunity to file a Sur Sur Response Brief. Because the Court in its April 9, 2009 Order (Doc. # 36) permitted Plaintiff's proposed Sur

Sur Response Brief to be filed, the Court now grants in part and denies in part Plaintiff's Opposition to Defendants' Motion for Sur Reply Brief (Doc. # 33).

DATED this 24th day of June, 2009.

James A. Teilborg
United States District Judge